511

In re Brent R. FRASER, Debtor.

In re Patricia FRASER, Debtor.

Bankruptcy Nos. 96–10954, 97–10187.

United States Bankruptcy Court,
D. Maine.

Sept. 24, 1998.

Michael S. Haenn, Bangor, ME, for Key-
Bank, plaintiff.

Louis H. Kornreich, Gross, Minsky, Mogul & Singal, Bangor, ME, for debtor.

Peter C. Fessenden (Chapter 13 Trustee), Brunswick, ME.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Chief Judge.

This memorandum of decision addresses the debtors' objections to the secured claim of KeyBank. For the reasons set forth below, the objection is sustained in part and denied in part.

*Background*

KeyBank filed a timely proof of claim in this Chapter 13 case. The debtors objected to KeyBank's claim. Following asset sales and collection of insurance proceeds available on account of a fire loss, it became apparent that the Chapter 13 estate would contain sufficient funds to pay all claims, including those of KeyBank.

On May 6, 1998, the court convened hearings to address, among other things, a motion to dismiss filed by the Chapter 13 trustee and the debtors' motion seeking authorization for distribution of the insurance proceeds. Following extensive off-the-record discussions about the timing and extent of payments which might be made to Key-Bank in satisfaction of its secured claim, I entered an order intended to effect an expedited procedure for resolving any and all disputes about the amount of the KeyBank claim so that the funds held by the Chapter 13 trustee could be disbursed to KeyBank and to all creditors quickly. In pertinent part, that order provided as follows:

> KeyBank shall, as soon as practicable, provide the debtor with a full accounting of its claim, consistent with representations on the record, showing principal, interest, fees, charges, penalties and professional fees due and owing, together with a *per diem*. The debtor shall have 10 days following receipt of Key's accounting to file with this court an amended objection to any part of Key's claim. If no amended objection to the Key claim is made within the 10 days following receipt of Key's accounting, the Chapter 13 trustee shall forthwith disburse to Key the amount of its claim and prior to the disbursement to any other creditor or the holder of any other claim as against the estate. To the extent the debtor's amended objection demonstrates that portions of the Key claim are not contested, the trustee shall disburse such uncontested portions to Key on Key's request. This disbursement shall not waive the rights of any party pursuant to 11 U.S.C. § 506(c).

Order of May 6, 1998, ¶ 4.

In the course of the May 6, 1998, hearings, I read the substance of the order into the record and inquired of debtors' counsel what more was needed by way of an accounting for the KeyBank claim. After explaining the debtors' desire to complete disbursements as quickly as possible (thereby enabling the debtors to collect any surplus that might exist), debtors' counsel explained in detail the information the debtors required by way of an accounting. In response, the bank's counsel stated that he "doubt[ed] very much" that there would be "any problem" with providing the information sought by the debtors. As to that information he was "sure we can get it all" and that the bank could produce it, in all likelihood, "extremely promptly."

The KeyBank accounting was not forthcoming within a reasonable time after the May 6 hearing. On July 20, 1998, after repeated attempts to elicit the accounting from the bank, debtors' counsel asked that a hearing be set for September 10, 1998, to consider debtors' claim objection. The request expressly indicated that the bank had not yet served or filed its amended claim, which was to include the accounting discussed at the May 6 hearing.

Hearings convened on September 10, 1998. As of that date the bank had yet to provide the detailed information that it had promised to deliver in May. In the course of the hearing the debtors restated their objection to appraisal fees, environmental survey fees, attorneys' fees, and interest components of the bank's claim. Debtors' counsel, without previously having filed a motion to compel the bank to provide its accounting pursuant to the May 6 order, asked the court peremptorily to disallow those components of the bank's

claim. I declined to do so, but ordered the bank to submit any further documentation in support of its claims within five days and provided the debtors five days thereafter to respond. The parties have complied with that directive and, having reviewed their submissions, my determinations are as follows:

### 1. *Appraisal and Environmental Survey*

■ The debtors' objections to the bank's claim for the costs of an environmental survey and an appraisal, each obtained at the bank's request in the course of foreclosure, is overruled. The charges for such services are clearly within the parameters of the loan agreement. The circumstances of the case and character of the real estate upon which the bank sought to foreclose made it entirely reasonable for the bank to have obtained them. The fact that the debtor disagreed with the results of the appraisal, and that subsequent events have verified the accuracy of the debtors' view, are not a sufficient basis to disallow the appraisal charges.

### 2. *Interest and Late Charges*

■ The documentation for KeyBank's secured claim, including that provided before and after the September 10, 1998, hearing, demonstrate the accuracy of KeyBank's interest calculations and the applications of payments to accrued interest, late charges, and principal. There is nothing in the record to indicate that the interest and late charges imposed are unreasonable or at variance with the debtors' contractual relationship with the bank. However, the fact that interest and charges have accrued for as long as they have is due, at least in recent months, to the bank's unreasonable delay in providing an accounting so that these issues could be resolved and funds could be disbursed.

In the course of the May 6, 1998, hearings, the bank's counsel repeatedly stated that it would be "no problem" for the bank to provide an accounting for its claim. Yet, at the September 10, 1998, hearing, the bank's counsel protested that the information that the debtors sought was something that had seldom, if ever, been requested in the many years he had represented the bank and that the provide it would be an onerous and time consuming task. I reject those contentions as disingenuous. They are completely at odds with the representations made on the record in the course of the May 6, 1998, hearing. What is more, notwithstanding counsel's protests, the information was provided within five days of the September 10, 1998, hearings.

Accordingly, the debtors' objection to the KeyBank claim is sustained as to all interest and late charges which have accrued since May 11, 1998, five days after the May 6, 1998, hearing.

### 3. *Counsel Fees*

■ KeyBank seeks $10,500.00 in counsel fees. As an oversecured creditor, it is entitled to *reasonable* attorneys' fees because they are provided for under the loan agreement. *See* 11 U.S.C. § 506(b); *In re Kalian*, 178 B.R. 308 (Bankr.D.R.I.1995).

Again, inconsistent with the representations made at the May 6, 1998, hearing, the bank's counsel did not produce an itemized statement of services and charges rendered to the bank on the debtors' account until the September 10, 1998, hearing. After the hearing, he filed an affidavit elaborating on the information set forth in the itemization.

I will not allow the entire amount of the bank's claim for legal fees and expenses for two reasons. First, the documentation leaves it uncertain whether the bank has incurred $10,500.00 in *bona fide* fees. Second, I do not consider that the bank is entitled to fees it incurred after early May 1998.

■ *1. Rates Charged.* Attorney Haenn's itemization shows that he charges the bank at the rate of $135.00 per hour and that he charges the bank $60.00 per hour for paralegal time. However, I am concerned that Exhibit B to counsel's affidavit shows that, for purposes of the state court foreclosure proceeding against the Frasers, he sought imposition of attorneys' fees and charges based on a $160.00 per hour constructive rate for counsel time and a $65.00

per hour constructive rate for paralegal time.[1]

As a consequence of the possibility that a disparity between actual rates and constructive rates may be embodied in the bank's assertion that it is entitled to $10,500.00 for counsel fees under its secured claim, I have reviewed Attorney Haenn's actual billing records contained in Exhibit E to his affidavit. They disclose that, through May 8, 1998, his bill for legal services totaled $8,611.50 and expenses billed to KeyBank totaled $1,108.81, for a total of $9,720.31. I will limit the bank's recovery of legal fees and expenses to amounts it has been charged. It may take no more.

■ *2. Reasonableness of KeyBank's Legal Fees.* The debtor has challenged KeyBank's right to *any* post-petition fees on account of the bank's counsel's asserted obstructionism and unreasonableness. In the course of the September 10, 1998, hearing, I specifically invited debtors' counsel to provide support for those conclusory assertions and expected that some further evidence of them would accompany the debtors' final submissions. Those submissions did not deliver on that score.

Based upon my knowledge of the history of this case and a review of the itemized statement for services leads me to conclude that, although the case has been contentious and the parties have not always been cooperative and reasonable with one another, those general complaints have not inflated the bank's legal fees to the point of unreasonableness. However, for the same reasons as those set forth above regarding interest and late charge accruals, I will not approve any attorneys' fees for services rendered after May 11, 1998.

Accordingly, the debtors' objection to the legal fees component of KeyBank's secured claim is sustained in part. The bank is allowed the total amount of $9,720.31 for legal services and expenses, representing bank counsel's actual charges for work performed before May 11, 1998.

■ *3. Lingering Concerns.* As a final matter, I must emphasize once again that I strongly disapprove of KeyBank's practice of authorizing its attorney to seek court assessment of legal fees and expenses against debtors, in this court or in any other court proceeding (including state court foreclosure actions), at rates other than those it is actually charged for those services. Doing so is abusive to debtors, inflating bank claims unreasonably, potentially diminishing distributions available to junior creditors in bankruptcy and potentially enlarging post-foreclosure deficiency judgments in state court. As a consequence, I will provide a copy of this memorandum to the Chief Judge of the Superior Court for the State of Maine and to the Chief Judge of the District Court for the State of Maine with a cover letter suggesting that they scrutinize carefully KeyBank's claims for legal fees in connection with any proceedings brought before them or other judges in their courts.

### CONCLUSION

For the reasons set forth above, KeyBank's secured claim is allowed to the extent of outstanding principal, in the amount of $28,395.19; interest and late charges as accrued through May 11, 1998, only; appraisal costs of $2,500.00 and environmental survey costs of $1,255.00; and legal fees and expenses in the total amount of $9,720.31. Upon confirming the precise amount of accrued interest and late charges payable in consultation with KeyBank's counsel and debtors' counsel, the Chapter 13 trustee is

---

1. Although the practice of charging one rate to the client, but seeking another rate imposed by the court under an attorneys' fees clause in a loan agreement is ethically suspect, it has been disclosed, although not expressly, in paragraph eight of counsel's affidavit. The affidavit states:

The actual billing records which I maintain for the Fraser obligations are attached hereto as Exhibit E. My agreement with KeyBank, not the subject of any written fee agreement applicable to this particular file, is that I do not charge my client for photocopies (other than substantial projects), fax charges, or toll calls. *However, with the consent of KeyBank in all proceedings in which legal fees are receoverable [sic] I request that the respective court award fees at an hourly rate more reasonably proximate to the hourly rates charged by counsel with comparable experience.* Affidavit of Michael S. Haenn, Esq., dated September 15, 1998, at ¶ 8 (emphasis supplied).

authorized to disburse funds in satisfaction of KeyBank's secured claim and, thereafter, to complete disbursements to parties-in-interest according to the dictates of the Bankruptcy Code.